# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. SANFORD, | Case No. 1:20-cv-00792-BAM (PC) |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| EATON, *et al.*, | (ECF No. 15) |
| Defendants. | **THIRTY (30) DAY DEADLINE** |

Plaintiff Robert L. Sanford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint was not screened because Plaintiff requested leave to amend. (Doc. 12.) Plaintiff was granted leave to amend. The first amended complaint, filed on December 7, 2020, is before the Court for screening. (Doc. 15.)

**I.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the

1

1  pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not
2  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
3  conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell
4  Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as
5  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
6  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at California Correctional Institution ("CCI") in Tehachapi, California occurred.  Plaintiff names the following defendants:  (1) P. Eaton, Warden at Sierra Conversation Center ("SCC"), (2) Ralph M. Diaz, retired, Secretary of California Department of Corrections and Rehabilitation, (3) B. Cates, Warden at CCI, (4) C. Schuyler, Chief Deputy Warden at CCI, (5) B. Sanders, Associate Warden at CCI, (6) S. Shiesha, CMO at CCI, (7) U. Baniga, CPS at CCI.

Plaintiff alleges Eighth and Fourteenth Amendment[1] violations for injury to Plaintiff from unsafe and overcrowded conditions.[2]  Before arriving at CCI from SCC, Plaintiff was tested multiple times for COVID-19 ("COVID"), 6/5/2020, 6/10/2020, 6/15/2020, and tested negative

---

[1] While Plaintiff references the Fourteenth Amendment, he alleges facts implicating conditions of confinement violations under the Eighth Amendment.

[2] Throughout the first amended complaint, Plaintiff refers to allegations in the original complaint, such as referring to the original complaint as "see original complaint."  Before amending his complaint, Plaintiff was advised that an amended complaint supersedes the original complaint, and that his amended complaint must be complete in itself without reference to the prior or superseded pleading. (See Doc. 14, p.2.)

2

each time. When Plaintiff arrived at CCI E-facility, a COVID outbreak occurred as soon as Plaintiff arrived. The COVID outbreak started spreading to all other buildings.  Plaintiff was in orientation dorm Van Weston Upper, which was on quarantine due to COVID, when Plaintiff was moved to Clark Hall which had about 100 or more inmates.  Inmates were constantly being moved in and out because some were having symptoms of COVID such as coughing, fever, headaches, shortness of breath and so on. Clark Hall was extremely overcrowded, and there was no way to socially distance.  Bleach was not provided to stop the spread of COVID.  Nurses came twice a day to take temperature, but lined up inmates less than 6 feet apart.  This was an unreasonable risk of contracting COVID.

After being housed in Clark Hall for 2 weeks, Plaintiff and the entire dorm was moved to Rex Deal Dorm.  No one coordinated the transfer to keep inmates safely 6 feet part, and there was no precleaning of Rex Deal Dorm.  The dorm was unsanitary.  Staff and Administrators were aware the COVID virus lives on surfaces and also on with unsanitary laundry, bedding and where areas have not been cleaned.  The next day, when washing his clothes, Plaintiff could not smell the detergent, which he normally would be able to do.  He was told that this is a symptom of COVID. Plaintiff also could not taste his food.  Plaintiff was concerned he had contracted the virus. On July 11, 2020, Plaintiff began suffering from symptoms of COVID.  When the nurses came to do the temperature checks, Plaintiff told Jane Doe 1 and Jane Doe 2[3] that he had lost his senses of taste and smell. The nurses left and returned with a COVID test which Plaintiff took. Plaintiff was then moved on July 11, 2020 to Van Weston Low (isolation) with no bleach or cleaning supplies.  Plaintiff did his best to clean the cell.  Plaintiff was now having his vitals taken twice a day and Plaintiff told medical staff that he can't smell, or taste and he had a cough. The nurses came every day.  Plaintiff had not received confirmation that he was positive for COVID.

On July 14, 2020, Plaintiff filed a Health Care Grievance, #20000475, in which Plaintiff complained of overcrowding in the dorms and social distancing was not happening.  Plaintiff

---

[3] Plaintiff refers to the nurses who did temperature checks as Jane Doe 1 and 2.  But Plaintiff does not name any DOE defendants and does not name the nurses as defendants.

named each of the defendants. Plaintiff continues to suffer in that he cannot smell or taste as he could prior to contracting COVID. Plaintiff contracted COVID due to the unsafe overcrowded conditions at dorms at CCI and SCC. There was no way to socially distance.

Plaintiff brings his claims against Ralph M. Diaz for his failure to act and direct his subordinates to stop allowing the unsafe conditions of overcrowding.

The injuries Plaintiff suffered are the result of CDCR and its Administrators who have a ministerial duty to ensure inmates are not put in an unreasonable risk of harm from unsafe conditions. Acting warden at CCI, B. Cates, allowed inmates to be put at an unreasonable risk for the health and safety. Inmates lived in unsafe conditions of overcrowded dorms, poor ventilation, lead in drinking water and no bleach for cleaning supplies. There is also mold and asbestos at CCI.

Defendant Cates is liable as the head supervisor of the facility, who is aware of the facts that the buildings are not up to code and are overcrowded which does not allow inmates to socially distance 6 feet apart.

Defendant Chief Deputy Warden C. Schuyler is also liable for authorizing budget finances in support of unsafe conditions and overcrowded dorms. His budget authorization has resulted in dilapidated buildings with rusted pipes, asbestos, black mold, poor ventilation, lead in drinking water. As a result of overcrowding, Schuyler has injured Plaintiff. Plaintiff alleges that Defendant B. Sanders failed to act by authorizing subordinates to allow overcrowding where Plaintiff contracted COVID. Because he is Associate Warden, he is aware of the day to day operation of the yard and knows the dorms are overcrowded and putting inmates at unreasonable risk of contracting a deadly virus. He failed to stop the overcrowding.

Plaintiff was found positive for COVID in July 2020, and contracted in again and found positive in October 2020. He also has preexisting condition of asthma, for which he takes medication, anemia and Alpha Thalassemia Trait. Dr. S. Shiesha, the Chief Medical Officer was aware that inmates with preexisting medical conditions were at high risk of contracting COVID. Plaintiff was still forced to live in an unsafe conditions where inmates were being infected at an alarming rate. (Doc. 15, p. 14.) Shiesha failed to stop custody and administration from creating

an unsafe condition of overcrowding dorms.  Plaintiff filed a medical form 7362 explaining his symptoms. Plaintiff alleges Defendant Baniga, Chief Physician Surgeon at CCI, signed Plaintiff Health Care Grievance on September 14, 2020, misdiagnosed and reported incorrection symptoms that relate to Plaintiff: "you tested positive for COVID-19 with cough and headache for 1 day, however no additional symptoms were documents in EHRS."  Plaintiff alleges that this report is false, and Plaintiff told the nurse on July 11, 2020, that plaintiff could not taste or smell. He did not have symptoms for just one day.  Baniga is responsible for failing to stop a known unsafe condition of overcrowded dorms and falsifying documents.

Plaintiff alleges the overcrowding is the overcrowding may be impacted by the labor union which insists its members supervise a certain number of inmates in these overcrowded dorms to fulfill contractual obligations. These obligations require that a specific number of inmates be housed in a dorm, which results in overcrowding.

Plaintiff alleges he has been injured in that he has lost his sense of taste and smell, has shortness of breath, coughing up blood clots and has diminished quality of life. Plaintiff seeks compensatory damages and injunctive relief to stop CDCR from overcrowding dorms.

### III.    Discussion

Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983.  Because he is proceeding pro se, Plaintiff will be granted leave to amend his complaint to the extent that he can do so in good faith.  To assist Plaintiff, the Court provides the pleading and legal standards that appear relevant to his claims.

**A. Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.;*

5

*see also Twombly*, 550 U.S. at 556–557.

Although Plaintiff's complaint is relatively short, it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. Plaintiff's allegations must be based on facts as to what happened and not conclusions. In particular, Plaintiff attributes all overcrowding issues to the named defendants, but does not state what each person did or did not do which violated his constitutional rights. If Plaintiff files an amended complaint, it should be a short and plain statement of his claims, identifying what happened, when it happened and who was involved. Fed. R. Civ. P. 8.

### B.     Federal Rule of Civil Procedure 18 and 20

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed.R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

To the extent the Court can understand Plaintiff's claims, the claims for conduct at SSC are unrelated to claims for conduct at CCI. Plaintiff may not bring allegations regarding events at SSC with events occurring at CCI. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

### C.  Supervisor Liability

Insofar as Plaintiff is attempting to sue Defendants Eaton, Diaz, Cates, Schulyer, Sanders,

6

Shiesha and Baniga, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washin*gton, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See *Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

It is unclear the conduct Plaintiff alleges the Wardens, the Associate and deputy Wardens engaged in that violated his constitutional right.  Plaintiff has failed to allege direct participation in the alleged violations. Plaintiff talks about failings in the medical screenings, social distancing

7

in line, failure to preclean dorms, overcrowding in dorms, prison movement, and other deficiencies. Plaintiff has failed to allege the causal link between such defendant and the claimed constitutional violation which must be specifically alleged.  He does not make a sufficient showing of any personal participation, direction, or knowledge on these defendants' part regarding any other prison officials' actions.  Plaintiff has not alleged that these defendants personally participated in the alleged deprivations.

In addition, it is unclear what the policy is that is purportedly at issue.  Plaintiff has failed to "demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." Because supervisory defendants may not generally be held liable under a respondeat superior theory, Plaintiff will be provided an opportunity to amend to allege facts showing the supervisor defendants participated in a constitutional violation through their own conduct or established an unconstitutional policy. . *See Willard v. Cal. Dep't of Corr. & Rehab.*, No. 14-0760, 2014 WL 6901849, at *4 (E.D. Cal. Dec. 5, 2014) ("To premise a supervisor's alleged liability on a policy promulgated by the supervisor, plaintiff must identify a specific policy and establish a 'direct causal link' between that policy and the alleged constitutional deprivation.").

**D.    Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Additionally, the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacities. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).

To the extent that Plaintiff seeks damages from Defendants in their official capacities, the Eleventh Amendment bars Plaintiff's suit. *See Mitchell v. Washington*, 818 F.3d 436, 441 (9th

Cir. 2016). To the extent Plaintiff seeks prospective declaratory or injunctive relief, only cognizable claims against them may go forward. *See Armstrong v. Wilson*, 124 F.3d 1019, 1025 (9th Cir. 1997).

### E. Deliberate Indifference to Conditions of Confinement

Plaintiff presents his Eighth Amendment claims as conditions of confinement claims rather than a deliberate indifference to serious medical needs.[4] He challenges the contraction of COVID due to the overcrowded and unsanitary conditions.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at

---

[4] His allegations demonstrate that he was provided medical care. Medical nurses where coming twice a day to screen inmates, when Plaintiff reported symptoms, he was moved to isolation and medical staff checked on him daily. This conduct does not show subjective recklessness. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014).

837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

It is clear that COVID-19 poses a substantial risk of serious harm. See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison).

As an initial matter, the Court notes that overcrowding, by itself, is not a constitutional violation. *Doty v. County of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248-49 (noting that overcrowding itself not Eighth Amendment violation but can lead to

specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); See *Balla v. Idaho State Bd. of Corr.,* 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348-49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. *See Balla*, 869 F.2d at 471; See, e.g., *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Plaintiff alleges that the overcrowding has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other conditions. The Court recognizes that "[p]risons present unique concerns regarding the spread of this virus; by their very nature, prisons are confined spaces unsuited for 'social distancing.'" *Evdokimow v. Doll*, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021). Nevertheless, CDC guidelines specifically contemplate that individuals will be confined within prisons during the duration of this pandemic. See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited Mar. 29, 2021).

The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, are sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of

serious harm." The pertinent question in determining whether Plaintiff states a claim is whether Defendants Eaton, Diaz, Cates, Schulyer Sanders, Shiesha and Baniga actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021).  Plaintiff details the many measures implemented in order to protect the inmates from the risks of contracting COVID-19, including quarantine, isolation, vitals check, screenings, and housing movement. Even if the response at CCI has been inadequate, it has not disregarded a known risk or failed to take any steps to address the risk." *Wilson*, 961 F.3d at 843 (6th Cir. 2020). Moreover, Plaintiff fails to attribute any specific conduct to these defendants, other than that they were supervisors.  As explained, *supra,* supervisor liability is insufficient to state a cognizable claim against these defendants.  The Court is not discounting Plaintiff's concerns about contracting COVID-19. His concerns are valid and significant. However, nothing in his complaint suggests that Defendants Eaton, Diaz, Cates, Schulyer Sanders, Shiesha and Baniga disregarded the risk Plaintiff faced. Accordingly, he fails to state a claim against them.  He will be granted leave to amend.

Plaintiff also asserts claims against unidentified individuals working in health services for placing him in inhumane conditions and endangering his life after he tested positive and moved to a new cell. He asserts that his cell was cold, smelly, and dirty, and he was not given cleaning supplies when he requested them. With regard to the conditions of his cell while he was in isolation, the conditions Plaintiff alleges, even when taken together, are not so extreme that the Court can infer he was denied "the minimal civilized measure of life's necessities." See *Farmer*, 511 U.S. at 834

**F. False Report**

Plaintiff alleges that Defendant Baniga falsified the medical report and statements made by Plaintiff. *Johnson v. Felker*, No. 1:12–cv–02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim

under section 1983.") (citations omitted). Plaintiff's complaint therefore fails to state a claim based on allegations of a false medical injury report.

### G. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S*., 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

The injunctive relief Plaintiff is seeking, reduction of prison population and overcrowding, goes beyond what would be allowed under the PLRA as it is not narrowly tailored to address the violations of the rights at issue in this action and is too intrusive. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988). Therefore, the Court cannot grant broad requests for relief or requests based on the possibility of an injury.

**H. State Law Claims**

Plaintiff may be seeking to allege a negligence claims and possibly other tort claims against each Defendant.

Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

Further, the Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. *Shirk v. Vista Unified Sch. Dist*., 42 Cal. 4th 201, 208–09 (Cal. 2007); *State v. Superior Court of Kings Cty. (Bodde),* 32 Cal. 4th 1234, 1239 (Cal. 2004); *Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim– Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has failed to allege compliance with the Government Claims Act.

**IV. Conclusion and Order**

Plaintiff's first amended complaint fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal,* 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must

be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly,* 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.,* 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint curing the deficiencies identified by the Court in this order (or file a notice of voluntary dismissal);

3. Any amended complaint, shall be limited to 25 pages in length; and

4. If Plaintiff fails to file a second amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: __March 29, 2021__          /s/ *Barbara A. McAuliffe*          
                                   UNITED STATES MAGISTRATE JUDGE