# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. SANFORD, <br><br> Plaintiff, <br><br> v. <br><br> EATON, *et al.*, <br><br> Defendants. | Case No. 1:20-cv-00792-BAM (PC) <br><br> ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE <br><br> FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM <br><br> (ECF No. 19) <br><br> **FOURTEEN (14) DAY DEADLINE** |

Plaintiff Robert L. Sanford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's original complaint was not screened because Plaintiff requested leave to amend. (Doc. 12.) Plaintiff was granted leave to amend. The Court screened the first amended complaint, and Plaintiff was granted leave to amend. Plaintiff's second amended complaint, filed on June 1, 2021, is before the Court for screening. (Doc. 19.)

**I. Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

1

or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California Correctional Institution ("CCI") in Tehachapi, California, where the allegations in the complaint occurred. Plaintiff names the following defendants: (1) B. Cates, Warden at CCI, (2) C. Schuyler, Chief Deputy Warden at CCI, and (3) Does 1-5.

Plaintiff alleges Eighth and Fourteenth Amendment[1] violations for being infected with COVID 19. Plaintiff was infected with COVID 19 two times at CCI, once in July 2020 and another time in September/October 2020.

Plaintiff alleges he was infected because the administration and staff at CCI, E-facility failed to follow executive orders of the governor and protocols established by CDCR. The

---

[1] While Plaintiff references the Fourteenth Amendment, he alleges facts implicating conditions of confinement violations under the Eighth Amendment.

2

administration and staff at CCI refuse to comply with the Center for Disease Control required protocols to prevent contracting COVID 19.  The warden is the overall responsible party for the care of inmates at CCI.

On June 18, 2020, Plaintiff was transferred to CCI, E facility.  Before being transferred, CDCR was under executive order to quarantine new arrival inmates before housing them in general population. Executive orders also mandated social distancing, masks, washing hands.  There was a protocol in place that rooms with more than 10 beds was supposed to include partitions.  When Plaintiff arrived at CCI, he was housed in the quarantine unit, which also housed permanent inmates who worked as porters.

On June 20, 2020, a massive outbreak of COVID 19 happened at CCI where more than 60 cases were reported among staff and inmates.  The protocols were not adhered to by the administration and staff at CCI, including Defendant Cates, who allowed staff to operate in reckless disregard by not enforcing protocols for staff to wear masks, provide hand sanitizer and increase social distancing, among other lapses. (Doc. 19, ¶10.)

In June 2020, Plaintiff's housing unit was ordered to line up to have the medical staff perform a COVID 19 test.  Some inmates refused to test, and there was no action taken against them because they were not showing symptoms.  But these inmates were allowed to remain in the housing and put the tested inmates at unreasonable risk.

Plaintiff asked a correctional officer if he could remain in his current assigned cell because Plaintiff had a sink and toilet and would not have to share the common facilities.  The correctional officer told him that the officer could not make that decision because it was up to the administrators, such as the warden and the counselors, who were making all the bed move decisions.  (Doc. 19, ¶12.)

Plaintiff submitted a form 22 requesting to stay housed in his cell due to his pre-existing medical conditions.  His request was not responded to except by a counselor to tell him he was using a wrong form. (Doc. 19, ¶13.)

On June 26, 2020, Plaintiff was ordered by correctional staff to move to Clark Hall low dorm, per the orders of the warden and his administration.  While Plaintiff was packing up,

inmates who had tested positive were approved by Defendant Cates to be moved into Clark Hall low dorm to be housed with noninfected inmates. Does 1-5 (staff, correctional officers, medical staff, personnel, employees) approved these transfers. Inmates were coming and going and with a mass move of inmates, infected inmates and noninfected inmates, who were in close quarters. Brian Cates was on notice by Plaintiff's form 22 that Plaintiff needed to stay in his cell with the toilet and sink due to Plaintiff's preexisting conditions, yet defendant was mixing positively infected inmates with noninfected inmates and failed to implement any move plan to keep inmates safe.

When Plaintiff arrived at Clark Hall low dorm, dorm bunk beds were 2 ½ feet apart, crowded and not socially distanced. There were more than 80 beds and no partitions. The dorm had no ventilation. (Doc. 19, ¶17.) Staff failed to comply with mask protocols, and Defendant Cates failed to act with implementing any specific enforcement against staff. Cates allowed mass movement of contaminated inmates, as he was the only person who could give authorization to movement. (Doc. 19, ¶18.) The warden was well aware that the protocols were not being complied with by staff or inmates. The 14-day quarantine for new arrivals was ignored and disregarded. (Doc. 19, ¶20.) COVID 19 was spreading throughout Clark Hall and was a hot bed for infection. Cates still allowed inmates with known preexisting medical condition to be housed in the highly infected environment.

Plaintiff feared for his life. The dorm was crowded beyond capacity and unclean; the bathrooms were overcrowded. The dorm was poorly ventilated. Defendant Cates was certainly aware of the conditions. Plaintiff was sharing a space with 5 other inmates with much less than 6 feet between them. Defendant Cates had the ability to act by installing partitions between the bunks, but Cates failed to provide partitions to help prevent this spread of the disease. (Doc. 19, ¶24.)

In about July 2020, Plaintiff saw Defendant Schuyler come into the Clark Hall where Plaintiff was living. Plaintiff talked to him and asked why there were not any partitions in the dorms to prevent the spread. Defendant Schuyler said, "him and the warden were working on alternatives." The correctional officers intervened and was escorted away, but not before

Schuyler saw the dorm and saw the overcrowded conditions. (Doc. 19, ¶24.) Cates and Schuyler were still not addressing that new arrivals be quarantined for 14 days and that persons with pre-existing conditions were in Plaintiff's dorm where infection was spreading.

On July 10, 2020, every inmate in Clark Hall low was told to pack their property and the whole dorm was being moved to Rex Deal Dorm. The new dorm had not been cleaned or sterilized and inmates were told to move quickly causing confusion and chaos. Cates and Schuyler were aware and authorized the move of about 100 inmates. They were forcing the inmates, including Plaintiff, in to contaminated living areas with no PPE, no cleaning supplies, gloves or hand sanitizer or anything. The Rex Deal dorm had dirty laundry left everywhere. This dorm was worse than Clark Hall low, as there was no social distancing of beds, no partitions, even though the dorms had more than 10 beds. Cates was not concerned but knew of the conditions of the dorm. The CDCR Secretary and federal receiver established the recommended protocol for partitions. (Doc. 19, ¶29.)

In Rex Deal Hall, Plaintiff tried to clean with his own supplies. He now had a bunky above him with terrible hygiene. Plaintiff could not know if the virus was on surfaces. These conditions put him into danger.

On July 11, 2020, Plaintiff awoke and could not smell his detergent, fragrant oils or taste his food. Plaintiff has pre-existing conditions of asthma, anemia, and thalaesmia (sickle cell trait). Plaintiff became concerned he was infected. Plaintiff told the nurse who came to take temperature checks. (Doc. 19, ¶31.) Plaintiff told Jane Doe #1 and Jane Doe #2 that he could not taste or smell. They returned a short time later with a COVID 19 test kit. He was tested and told he may be moved to another dorm where they are housing inmates who have been infected. Plaintiff was moved to Van Weston low dorm. (Doc. 19, ¶32.) This dorm was unclean and contaminated, had 12 beds in it, and the conditions were deplorable. It was not cleaned or disinfected with cleaning agents. He was the only person in the tank and was fearful for his life as he had pre-existing conditions. He was not allowed to contact his family, except by US mail. The nurses came to check his vitals twice a day. (Doc. 19, ¶33.) Plaintiff was then told he had tested positive.

Defendants were aware that the rise in population and with other inmates transferred from other prisons was now causing the mass outbreak at CCI. Defendants were willfully and maliciously ignoring that mass movement of inmates who had not been cleared for the full 14-day quarantine, and who were now mixed with other inmates all over CDCR, was elevating the risk of transmission of COVID 19. Plaintiff was suffering with loss of smell and taste, coughing up blood clots, headaches, and joint pain. Defendants ignored all of Plaintiff's attempts to inform them that he was at risk. (Doc. 19, ¶36.)

Plaintiff was moved again back to Clark Hall low, where he was housed with other infected inmates. They were sleeping less than 3 feet from each other and ventilation very poor. Inmates refused to wear masks due to the high temperature in the dorm. (Doc. 19, ¶37.) There was black mold in showers, asbestos, no ventilation, no partitions and no quarantine for 14 days. All of the conditions and protocols were deliberately being ignored by CCI and staff under the direction of Defendant Brian Cates. (Doc. 19, ¶39.)

On about July 25, 2020, Plaintiff visited the mental health nurse, for mental conditions arising from haven gotten COVID 19 and his mental state. Plaintiff told the nurse that he did not want mental medication but wanted therapy. Jane Doe nurse said if Plaintiff was not willing to take medication, the psychiatrist would not see Plaintiff. His mental state was not being taken care of except if he agreed to take medication. (Doc. 19, ¶40.)

Plaintiff completed the 14-day quarantine and was moved to Clark Hall upper where the conditions were overcrowded and worse that he had yet experienced. He was housed in bed 18, and the dorm was packed to maximum capacity with no ventilation, mold in showers, asbestos and staff infections. Plaintiff was placed in unreasonable risk of harm as Defendants were aware of the dorm conditions and that inmates with pre-existing medical conditions are at substantial risk of contracting COVID 19. Plaintiff did in fact contract COVID 19 as a result of Cates' mass movement of inmates, combining infected and non-infected inmates. (Doc. 19, ¶41.)

Plaintiff was again infected with COVID 19 for a second time in late September/October 2020. Plaintiff had been administered a rapid test, because he was scheduled to see the dentist. The test came back positive, and Plaintiff was tested a second time. (Doc. 19, ¶42.) Plaintiff was

moved to Davis Hall; another building being used for COVID 19 housing. The dorm was filthy with debris and old linen and no one had cleaned the cell. Bathrooms were community bathrooms and showers. (Doc. 19, ¶43.)

Plaintiff was seen by a nurse, to whom Plaintiff reported that he is still unable to smell or taste and was coughing up blood clots, had headache and joint pain. Plaintiff was also suffering from shortness of breath. Plaintiff was told the same thing, the symptoms will go away soon, that there is no cure, and the disease is too new to know more. (Doc. 19, ¶44.)

Plaintiff believes that U. Baniga, as Chief Physician, could have prevented Plaintiff's injury had he recognized that CCI was not compliant with protocols in doing mass movements of inmates, not routinely disinfecting or sanitizing dorms. Plaintiff alleges U. Baniga was absolutely aware of the substantial risk to Plaintiff and his report that CCI was following all COVID 19 protocols is untrue. (Doc. 19, ¶47.)

Plaintiff alleges that the long haulers effect of the virus is causing mental anguish and physical pain. Chief Surgeon U. Baniga did not recommend safety preventive measure that could have prevented Plaintiff from suffering a second infection.

Plaintiff summarizes his allegations as follows. CCI has not complied with executive order for COVID 19 protocols which placed Plaintiff in an unreasonable risk of imminent danger to contract COVID 19. Staff come and go from CCI and are the primary source of how the virus is spread at CCI. Staff refuse to wear masks and Defendants Cates and Schulyer failed to act to enforce protective measures to protect inmates with preexisting medical issues. Cates and Schulyer approved Plaintiff and other inmates be moved before the 14 days quarantine was complete and disregarded the dangers of allowing new arrival inmates to be mixed along with untested inmates that refused to take COVID 19 test. They authorized mass movement of inmates. Defendants failed to implement safety protocols that could have prevented infections and refused to have partitions placed between bunks.

Plaintiff alleges he filed a Government Claim on December 16, 2020.

Plaintiff seeks injunctive relief, declaratory relief and damages.

///

**III. Discussion**

Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies.

**A. Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendants Cates, Schulyer, or Baniga, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washin*gton, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See *Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.

1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff is attempting to allege that Defendants Cates and Schulyer participated in or directed the violations, or knew of the violations and failed to act to prevent them. Plaintiff has failed to allege direct participation in the alleged violations by the warden. Plaintiff alleges that the warden "knew" or "should have known" or "absolutely knew" about conditions in the dorms. Such conclusory allegations are insufficient to state the causal link between such defendant and the claimed constitutional violation. Plaintiff does not make a sufficient showing of any personal participation, direction, or knowledge on the defendant's part regarding any other prison officials' actions. The only allegation of direct participation by the warden is that an unnamed correctional officer told Plaintiff that the officer could not make that decision because it was up to "the administrators, such as the warden and the counselors," who were making all the bed move decisions. Plaintiff may not sue an official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Iqbal*, 556 U.S. at 679. In other words, wardens are not liable based solely on their role in supervising prisons. The second amended complaint appears to attempt to impute the purported failures of staff to Defendant warden, which is not permissible under Section 1983.

Further, there are no allegations other than conclusory allegations that Defendant Schulyer directly participated in the alleged constitutional violations. Plaintiff alleges that Defendant Schulyer was in the dorm one time and saw the crowded conditions. Like the warden, the Complaint appears to attempt to impute the purported failures of staff to Defendant Schulyer.

It is unclear whether Plaintiff continues to allege a claims against Chief Surgeon Bangia. Plaintiff does not name Chief Surgeon Bangia as a defendant, but he includes what could be construed as charging allegations against Bangia. But liability may not be imposed on a supervisor under the theory of respondeat superior, because every defendant is liable only for his or her own misconduct. *Iqbal*, 556 U.S. at 676–77.

///

**B.      Deliberate Indifference to Conditions of Confinement**

Plaintiff presents his Eighth Amendment claims as conditions of confinement claims rather than a deliberate indifference to serious medical needs.[2] He challenges the contraction of COVID due to the overcrowded and unsanitary conditions and improper inmate movement and failure to adhere to proper protocols. Plaintiff appears to claim that his transfer numerous times within CCI, to different housing units, put him at extreme risk of contracting COVID-19 in violation of the Eighth Amendment.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference."

---

[2] His allegations demonstrate that he was provided medical care. Medical nurses where coming twice a day to screen inmates, when Plaintiff reported symptoms, he was moved to isolation and medical staff checked on him twice daily. This conduct does not show subjective recklessness. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014). In addition, Plaintiff's allegations contain a reference to two nurses, Jane Doe #1 and Jane Doe #2. However, Plaintiff has failed to name these two nurses as defendants, and the allegations fail to show that they acted with deliberate indifference, as they provide a COVID test to him when he complained of symptoms. Plaintiff does not allege any failure on the nurses' part.

*Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

It is clear that COVID-19 poses a substantial risk of serious harm. See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.' ").

However, in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and any other defendants named, Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P,

2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison). Plaintiff alleges that the actions they took, did not control the spread, did not eliminate the spread and exacerbated the spread of the virus.

As an initial matter, the Court notes that overcrowding, by itself, is not a constitutional violation. *Doty v. County of Lassen*, 37 F.3d 540, 545 n.1 (9th Cir. 1994); *Hoptowit v. Ray*, 682 F.2d at 1248-49 (noting that overcrowding itself not Eighth Amendment violation but can lead to specific effects that might violate Constitution), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); See *Balla v. Idaho State Bd. of Corr.,* 869 F.2d 461, 471 (9th Cir. 1989) (allegations of prison overcrowding alone are insufficient to state a claim under the Eighth Amendment.); *see also Rhodes v. Chapman*, 452 U.S. at 348-49 (double-celling of inmates by itself does not inflict unnecessary or wanton pain or constitute grossly disproportionate punishment in violation of Eighth Amendment). An overcrowding claim is cognizable only if the plaintiff alleges that crowding has caused an increase in violence, has reduced the provision of other constitutionally required services, or has reached a level rendering the institution no longer fit for human habitation. *See Balla*, 869 F.2d at 471; See, e.g., *Akao v. Shimoda*, 832 F.2d 119, 120 (9th Cir. 1987) (per curiam) (as amended) (reversing district court's dismissal of claim that overcrowding caused increased stress, tension, and communicable disease among inmate population); *Toussaint v. Yockey*, 722 F.2d 1490, 1492 (9th Cir. 1984) (affirming that Eighth Amendment violation may occur as result of overcrowded prison conditions causing increased violence, tension, and psychiatric problems).

Plaintiff alleges that the overcrowding has exacerbated the conditions leading to transmission of COVID. Plaintiff alleges that there is no way to socially distance, among other conditions. The Court recognizes that "[p]risons present unique concerns regarding the spread of this virus; by their very nature, prisons are confined spaces unsuited for 'social distancing.'" *Evdokimow v. Doll*, No. 4:21-CV-00261, 2021 WL 767554, at *6 (M.D. Pa. Feb. 26, 2021). Nevertheless, CDC guidelines specifically contemplate that individuals will be confined within

12

prisons during the duration of this pandemic. See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited July 16, 2021).

The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded and poorly ventilated, with no partitions, are sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm." The pertinent question in determining whether Plaintiff states a claim is whether Defendants Cates and Schulyer actions demonstrated deliberate indifference to that risk of harm. The key inquiry is not whether Defendants perfectly responded, complied with every CDC guideline, or whether their efforts ultimately averted the risk; instead, the key inquiry is whether they "responded reasonably to the risk." *See Stevens v. Carr*, No. 20-C-1735, 2021 WL 39542, at *4 (E.D. Wis. Jan. 5, 2021).

Plaintiff details the many measures implemented in order to protect the inmates from the risks of contracting COVID-19, including quarantine, isolation, vitals check, screenings, and housing movement. Plaintiff finds fault with how Cates and Schulyer responded, by the mass movement of inmates, not fully quarantining arriving individuals and not installing partitions, among other faults. The actions of Defendants may not have been effective or a "perfect response," but Plaintiff does not adequately allege that they were deliberately indifferent to the spread of the disease. The numerous efforts undertaken demonstrate that Defendants were engaged in active conduct to manage the spread of the virus. Indeed, Defendant Schulyer told Plaintiff that they were trying "alternatives" to manage the situation.

Even if the response at CCI has been inadequate, Defendants Cates and Schulyer did not disregard a known risk or fail to take any steps to address the risk. *Wilson*, 961 F.3d at 843 (6th Cir. 2020). The Court is not discounting Plaintiff's concerns about contracting COVID-19. His concerns are valid and significant. However, the second amended complaint does not suggests that Defendants Cates and Schulyer disregarded the risk Plaintiff faced. Defendants were trying

different alternatives to manage an outbreak, even if those alternatives were not perfect or failed in their objectives. Accordingly, he fails to state a claim.

Plaintiff also asserts that he was placed in inhumane conditions and endangering his life after he tested positive and moved to a new cell. He asserts that his dorm was dirty and unsanitized, and he was not given cleaning supplies. With regard to the conditions of his cell while he was in isolation, the conditions Plaintiff alleges, even when taken together, are not so extreme that the Court can infer he was denied "the minimal civilized measure of life's necessities." See *Farmer*, 511 U.S. at 834.

### C. Deliberate Indifference to Serious Medical Need

To allege a claim of deliberate indifference, plaintiff must show he had a serious medical need and defendants were deliberately indifferent to that need. A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Although unclear in the allegations, Plaintiff may be attempting to allege a deliberate indifference claim as to the mental health nurse, Jane Doe, who Plaintiff consulted regarding his mental health on July 25, 2020.

Plaintiff fails to state a cognizable claim. The facts allege fail to show deliberate indifference by the Jane Doe nurse. Indeed, Plaintiff alleges that she offered medication to address his mental health needs. Plaintiff, however, refused the medication. A difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

///

**D.     Injunctive Relief**

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

Plaintiff does not state the injunctive relief Plaintiff is seeking. The PLRA requires that injunctive relief be narrowly tailored to address the violations of the rights at issue. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988). Therefore, the Court cannot grant broad requests for relief or requests based on the possibility of an injury.

**E. State Law Claims**

Plaintiff may be seeking to allege a negligence claims and possibly other tort claims against each Defendant.

Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original

jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ... the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. Plaintiff has failed to state a cognizable federal claim

Further, the Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint. *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09 (Cal. 2007); *State v. Superior Court of Kings Cty. (Bodde),* 32 Cal. 4th 1234, 1239 (Cal. 2004); *Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs.,* 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v. California Pub. Utils. Comm'n,* 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim– Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).

Plaintiff has alleged that he has complied with the Government Torts Claim Act.

### IV. Conclusion and Order

For the reasons stated, Plaintiff's second amended complaint fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED as follows:

1. The federal claims in this action be dismissed based on Plaintiff's failure to state a cognizable claim upon which relief may be granted; and
2. The Court decline to exercise supplemental jurisdiction over Plaintiff's purported state

law claims.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 16, 2021**         /s/ *Barbara A. McAuliffe*
                                 UNITED STATES MAGISTRATE JUDGE