UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT L. SANFORD,

Plaintiff,

v.

EATON, *et al.*,

Defendants.

No. 1:20-cv-00792-NONE-BAM (PC)

ORDER ADOPTING IN PART FINDINGS AND RECOMMENDATIONS

(Doc. 21)

Plaintiff Robert L. Sanford filed this lawsuit against prison officials, alleging that they were deliberately indifferent to the serious risk of harm the coronavirus posed to him. The assigned magistrate judge recommended dismissing Plaintiff's second amended complaint (Doc. 19, "SAC") for failure to state a federal-law claim and declining jurisdiction over any state-law claims. (Doc. 21.) Plaintiff timely filed objections on September 9, 2021. (Doc. 24.)

The SAC brings a conditions-of-confinement claim against Warden Cates and Chief Deputy Warden Schuyler of California Correctional Institution for their response to the COVID-19 pandemic. The findings and recommendations found that although COVID-19 is an objectively substantial risk of serious harm, Plaintiff failed to allege Defendants were deliberately indifferent to that risk because they were considering different approaches to deal with the pandemic and had implemented some measures. The findings and recommendations further found that Plaintiff failed to allege personal involvement by Defendants. (Doc. 21.) Plaintiff

objects on both grounds. (Doc. 24.)

**A. Personal Involvement**

Plaintiff objects to the magistrate judge's conclusion that Plaintiff failed to state an Eighth Amendment claim against Defendants.

With respect to Defendant Schuyler, Plaintiff alleges he encountered Defendant Schuyler on July 1 or 2, 2020 while Defendant Schuyler was touring Clark Hall Low Dorm. (SAC ¶¶ 24–26.) That dorm was experiencing an outbreak, had crowded conditions, and was extremely unsanitary. (*Id.* ¶¶ 22, 24–26.) Plaintiff asked Defendant Schuyler, "Why aren't you and the administration providing partitions for the dorms to prevent the spread of Covid-19?" Defendant Schuyler responded that he and the warden "were working on alternatives[.]" (*Id.* ¶ 24.) Plaintiff alleges that the alternatives they decided on were to make mass moves to other unsanitary areas by July 10. (*Id.* ¶ 30.) Thus, the SAC adequately alleges that Schuyler was personally involved in the failure to provide partitions between beds and about the crowded and unsanitary conditions of Clark Hall Low Dorm. The SAC does not adequately allege, however, that Schuyler was aware of and failed to respond to any other infirmities in the prison's response to COVID-19. For instance, Plaintiff does not allege that Defendant Schuyler had anything to do with the decision for how long to quarantine new arrivals or that he was aware of prison guards' failure to wear masks.

With respect to Defendant Cates, Plaintiff repeatedly concludes that actions are attributable to Cates without factual support for his conclusions. For examples, he alleges that Cates sent Schuyler to Clark Hall Low Dorm to investigate the situation. Though it was "apparent" that Schulyer was there at Cates' direction, this is simply Plaintiff's speculation and is unsupported by factual allegations.

The SAC alleges also Plaintiff asked a correctional officer about his housing situation and his request not to share facilities with inmates who refused to take a COVID-19 test. The officer informed Plaintiff that it "was no longer his call" as to inmate housing at the facility and "directed [Plaintiff] to contact the CCI Administrators, such as the Warden or one of the Counselors" to discuss his concerns. (SAC ¶ 12.) Once again, the fact that Plaintiff concludes that the CO meant

that Cates was personally deciding housing decisions is not support by any factual allegations. Plaintiff's mere conclusions are insufficient to state a claim.

Plaintiff sent to Cates's office a Form 22 with his request to remain in his current cell. (*Id.* ¶ 13.) Plaintiff did not receive a reply from the warden's office but was told by staff that he had used the wrong form. (*Id.*) This does not demonstrate that Cates knew about Plaintiff's plight. Rather, there is no factual support that the ever received it, because it appears that it was screened out before reaching him.

On the other hand, Plaintiff alleges he spoke with a correctional officer about being moved before the expiration of the 14-day quarantine period. Plaintiff was told "they have been authorized by the warden to move all the positive infected Covid-19 inmates into Van Weston Upper[.]" (*Id.* ¶ 15.) This allegation is minimally sufficient to demonstrate personal involvement by Cates. In all other respects, Plaintiff's allegations about Cates's involvement are conclusory or otherwise inadequate.

**B. Deliberate Indifference**

The findings and recommendations correctly note that if Defendants responded reasonably to the pandemic, then they were not deliberately indifferent. *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (prison officials not deliberately indifferent "if they responded reasonably to the risk, even if the harm ultimately was not averted"); *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020) ("Specifically, a prison official violates an inmate's Eighth Amendment right only if that official is deliberately indifferent—in other words, if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably."). Conversely, an official who is subjectively aware of a substantial risk of serious harm and fails to respond reasonably is subject to Eighth Amendment liability. *Id.*

Plaintiff objects to the magistrate judge's recommendation to dismiss Plaintiff's Eighth Amendment claim by arguing that Defendants' response was unreasonable. The findings and recommendations concluded that Defendants were aware of the risk and were attempting different approaches. The findings and recommendations point out that Plaintiff alleges he approached Defendant Schuyler and asked why there were no partitions between the beds and Defendant

Schuyler responded by saying that he and the warden "were working on alternatives[.]" (SAC ¶ 24.) Plaintiff also alleges that nurses conducted temperature checks, that he was offered tests for COVID-19, that he was quarantined after testing positive, and that the prison was taking various measures when considering housing.

Courts reviewing deliberate-indifference claims regarding COVID-19 have considered CDC guidance documents. "[W]hile guidance from outside organizations is not determinative of constitutional requirements, 'known noncompliance with generally accepted guidelines for inmate health strongly indicates deliberate indifference to a substantial risk of serious harm. Such guidelines may include CDC guidance.'" *Maney v. Brown*, No. 6:20-CV-00570-SB, 2021 WL 354384 (D. Or. Feb. 2, 2021) (quoting *Shank v. Corizon Inc.*, No. CV 19-04638-PHX-ROS (JFM), 2020 WL 5628014, at *4 (D. Ariz. Sept. 2, 2020)) (some internal quotation marks omitted). *See also Criswell v. Boudreaux*, No. 1:20-cv-01048-DAD-SAB, 2020 WL 5235675, *5 n.3 (E.D. Cal. Sept. 2, 2020) (noting district courts have held that "the CDC Guidelines represent the floor, not the ceiling, of an adequate response to COVID-19 at the Jail." (quoting *Ahlman v. Barnes*, 445 F. Supp. 3d 671, 691 (C.D. Cal. 2020))); *see also* 4 Michael B. Mushlin, *Rights of Prisoners* § 19:14 (5th ed. Oct 2021 update) ("Many courts have used the CDC guidelines as the benchmark" for whether a "response is so insufficient that it constitutes deliberate[] indifference"). Additionally, in the context of the Fifth Amendment, the Ninth Circuit reviewed a preliminary injunction in *Roman v. Wolf*, 977 F.3d 935 (9th Cir. 2020) that required an immigration detention centers to comply with CDC guidance. There, the Ninth Circuit had previously modified the district court's preliminary injunction to require only "substantial compliance with the guidelines issued by the CDC for correctional and detention facilities to follow in managing COVID-19" instead of complete compliance. *Id.* at 939. In its published opinion on the matter, the Ninth Circuited noted that CDC "guidelines do not provide a workable standard for a preliminary injunction" due to their length and lack of specificity, thus making them "a poor guidepost for mandatory injunctive relief." *Id.* at 946 (citing Fed. R. Civ. P. 65(d)(1)(B), (C)). Thus, noncompliance with CDC guidelines can, in certain circumstances, state a constitutional claim for damages. The Court departs from the findings and recommendations to

the extent the findings and recommendations suggested that CDC guidelines are irrelevant to determining subjective deliberate indifference. However, the Court reiterates that to establish that prison officials acted unreasonably, Plaintiff must rely on more than their non-compliance with either CDC or CDCR policies; he must also establish that their response was unconstitutional. *See Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) ("There is no § 1983 liability for violating prison policy. Plaintiff must prove that the official violated his constitutional right." (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997))).

Though Plaintiff attributes every perceived failure to address the COVID-19 pandemic to Cates and Schulyer, he fails to allege facts to support these conclusions. Accordingly, the Court agrees that Plaintiff has failed to state a claim for violations of the Eighth Amendment.

**C. Conclusion**

The court adopts the remaining aspects of the magistrate judge's reasoning. However, the Court notes that it has provided Plaintiff with standards he was not previously given, particularly with respect to CDC guidance. Thus, the Court will grant Plaintiff one more opportunity to amend his complaint. Accordingly,

1. The court adopts in part the findings and recommendations issued on July 16, 2021, (Doc. 21);

2. Plaintiff's second amended complaint is dismissed with leave to amend within thirty days; and

3. This matter is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: **January 19, 2022**

UNITED STATES DISTRICT JUDGE