# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT L. SANFORD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>EATON, *et al.*,<br><br>　　　　　Defendants. | Case No.  1:20-cv-00792-JLT-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 33)<br><br>**FOURTEEN (14) DAY DEADLINE** |

　　　　Plaintiff Robert L. Sanford ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff's original complaint was not screened because Plaintiff requested leave to amend. (Doc. 12.)  Plaintiff was granted leave to amend.  The Court screened the first amended complaint, and Plaintiff was granted leave to amend. The Court screened the second amended complaint and issued findings and recommendations that the federal claims in this action be dismissed based on Plaintiff's failure to state a cognizable claim upon which relief. (ECF No. 21.)  The assigned District Judge adopted the findings and recommendations in part and dismissed the second amended complaint with leave to amend within thirty days. (ECF No. 27.) Plaintiff's third amended complaint, filed on March 16, 2022, is currently before the Court for screening.  (ECF No. 33.)

**I.　　Screening Requirement and Standard**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a

governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at Growlersburg Conservation Camp, in Georgetown, California. Plaintiff was previously housed at Sierra Conservation Center ("SCC") and at California Correctional Institution ("CCI") in Tehachapi, California, where the allegations in the complaint occurred. Plaintiff seeks to bring claims for events occurring both at SCC and CCI. Plaintiff names the following defendants: (1) B. Cates, Warden at CCI, (2) C. Schuyler, Chief Deputy Warden at CCI, and (3) P. Eaton, Warden at SCC.

Plaintiff alleges that "[a]ll defendant's [sic] were absolutely aware of Plaintiff's preexisting medical issues" regarding the deadly disease. Plaintiff alleges that Defendants have failed to prevent the spread of Covid, ignored the Center of Disease Control guidelines, safety data, and the three judge panel ruling in *Plata v. Newsom*. Defendants continue to ignore

guidelines to prevent the spread of Covid in the dorms of the two facilities and Plaintiff has been ping ponged back and forth from June 18, 2020 until November 9, 2021.  Plaintiff contracted Covid two different times due to mass movement of inmates from dorm to dorm, with no pre-cleaning of dorms before transferring one set of inmates that were previously infected and swapping with another dorm.

Plaintiff alleges that he sustained injury at SCC as of February 17, 2022 where Plaintiff was again infected with Covid and was forced to be housed in an isolated quarantine at SCC.

Plaintiff directly approached C. Schuyler about the deplorable conditions that Plaintiff was being subjected to at CCI, Clark Hall Lower dorm that housed approximately 125 inmates. Plaintiff asked Defendant Schuyler on about July 5, 2020, "why are you and the warden here at CCI allowing inmates to be subjected to this known dangerous condition, that in spreading throughout this facility, infecting inmates daily right here in the dorm, where there is poor ventilation, no soap or bathroom dispensaries for disinfectant, the mask protocols are being violated by the staff at CCI, who are the primary person who spread this deadly virus and its variant, also with the fact, the dorms are extremely overcrowded even to the point you can't move in any direction within your bed area without touching another inmate (its [sic] like being in a can of tightly packed sardines) with absolutely no social distancing available under any circumstances, asbestos, rusted beds, soiled mattresses, and mold are also contributing factors that are present in this dorm, and it appears that you and the Warden B. Cates are not taking any action as to these known dangerous conditions including the fact you guy's [sic] are aware that CDCR implements a 'Bed Positioning Policy' where there are to be 'Partitions' placed between the bunks that have 10 or more beds in room."  Defendant Schuyler said he was now here "on behalf of the warden to figure out how [we] were going to figure out what can be about some of the conditions in the dorm, and how to prevent his spreading of the virus."  Correctional Officer Edwards then interrupted Plaintiff and told him to stop asking questions and threatened Plaintiff.

On July 10, 2020, the Clark Hall Lower dorm was reassigned housing to the Rex Deal Dorm.  Over one hundred inmates were moved from Rex Deal Dorm to David Hall dorm.  There was no disinfecting of Rex Deal Dorm.  There was no disinfectant to clean the bed areas in Rex

Deal Dorm that had been left with soiled mattresses, bed linen, sheets, and clothes, and the beds were rusted.  The dorms were left in shambles from the previous mass movement.  This is a violation of CDC guidelines and CDCR cleaning protocols involving infectious disease while put Plaintiff in an unreasonable risk of harm and danger of Covid.

Defendants Cates and Schuyler were both aware of the immediate dangers with ordering mass movements of inmates within the facility and that it would contribute to the spread of Covid.  Both Cates and Schuyler were aware that dorms are identified as high risk areas for spreading and causing infections of inmates that are medically vulnerable under CCHC's Interim Guidance for Health Care and Public Health Provider.  Plaintiff did his best to warn against the danger defendants were doing to endanger Plaintiff.

Plaintiff was unable to smell or taste on July 11, 2020 after being forced to move into a deplorable know dangerous condition under mass movement with no precleaning or disinfecting of the contaminated bed areas.   On July 11, 2020, Plaintiff told nurses Jane Doe 1 and Jane Doe 2 he was having symptoms of Covid. Jane Doe 1 tested Plaintiff for Covid and on July 13, 2020 confirm Plaintiff was possible with Covid.  Plaintiff then filed a 602 appeal in log #18808, See Exh. A.

Plaintiff was employed as an ADA worker in a job to help disabled inmates at CCI A Facility in August through September 2020.  Plaintiff had to enter "known dangerous conditions of Dorms" located on E Facility after discovery again in October 2020 that Plaintiff was infected with Covid a second time. Plaintiff told his Supervisor Bliss about the "known dangerous conditions" during the months of August and September 2020 and that "these deplorable conditions" put Plaintiff at risk of danger.  Supervisor Bliss told Plaintiff that the warden ruled that bed positioning and other procedures are being followed and it is not more Bliss could do about the conditions and he's not spending money on patch work because the facility is closing ahead of schedule.  Plaintiff took his concerns to the Advisory Council Chair person Richard Broussard and his Sergeant Parvin Tanner who "provided Plaintiff with an [sic] direct eyewitness account of Warden  B. Cates admitting in a [sic] advisory Meeting he holds monthly with (IAC) member inmates to get updates, review policy changes that needed to be addressed to the inmate

population via the IAC memorandum." These two IAC member provided a sworn affidavit of their direct account of Warden Cates statement made in January 2021 where Cates stated in response to bed positioning and partition at E Facility that we are no longer under Covid 19 protocols here at CCI-E Facility regarding bed positioning and partitions and the Cates was not taking any actions regarding the bed positioning in that the positioning is adequate.

In his 602, Plaintiff also complained that CDCR was not protecting workers, ADA workers such as Plaintiff, such that CDCR was not following policy by giving Workman's compensation application after an injury to inmates whereas correctional officers and staff were receiving workman's compensation after testing positive for Covid. The 602 process is inadequate to timely address health care concerns due to the delay in 602 responses.

Housing dorms on E Facility are not in compliance with Covid Prevention and to limit the spread of Covid. Plaintiff is now suffering from lack of smell, taste, headaches, joint pain, cough of blood, respiratory issues, all associated with this preexisting conditions of asthmas, alpha thalassemia, sickle cell trait. Plaintiff has been diagnosed as having "long hauler effect" due to Plaintiff contracting Covid two different times. The sworn testimony of Broussard and Tanner is proof that Warden Cates was aware of the know dangerous condition that injured Plaintiff and continued to place Plaintiff in a dangerous conditions.

Plaintiff was moved to D Facility where the known condition still existed. Plaintiff complained to Warden and Secretary of CDCR Allison and Connie Gipson regarding the premature closing of E Facility without administrative process of classifications. Dorms in D Facility were even more crowded and as unsafe than E Facility dorms were and Plaintiff was forced to move to level 2 yard at D Facility on September 18, 2021, pending transfer to SCC where plaintiff now resides. Plaintiff made the warden of SCC, Patrick Eaton, aware of the known conditions. Both Wardens Cates and Eaton aware of the known deplorable conditions of the dorms. Plaintiff can show how inadequate the 602 process is for dealing with Covid and contributing to the spread of Covid. Plaintiff asks to "incorporate" P. Eaton in this complaint.[1]

---

[1] In the interest of judicial economy, the Court does not include allegations of conduct at SCC and Warden P. Eaton in the summary. (ECF no. 33, p.8-10.) The allegations of conduct at SCC and

In "ground one," plaintiff claims that "Plaintiff did give defendants [sic] absolute notice of the known unsafe condition's [sic] that continue to exist and has injured Plaintiff on two different occasions with contracting Covid-19." Defendants at CCI were "clearly aware of the known dangerous conditions, where they were direct eyewitnesses, to the facts, B. Cates had been placed on notice, regarding the known dangerous conditions of overcrowded dorms, the lack of bed positioning policies, and 'partitions' when social distancing is not available" were "clearly contributing Covid out breaks at E-Facility, along with housing inmates in uncleaned unsanitized dorms that were not pre-sanitized before housing inmates in these know dangerous conditions." Plaintiff alleges that Defendant Cates "personally ordered mass movement of inmates on E Facility, ordering the mixing of inmates in known contaminated dorms" on July 10, 2020. These actions resulted in Plaintiff being infected with Covid in July 2020 and again in October 2020. Defendants failed to act regarding Plaintiff's pre-existing medical concerns, elderly, at high risk should he contract Covid. Plaintiff alleges this conduct contributed to the spreading and ignored CDC Detention Guidelines (no mass movements of inmates, mixing contaminated inmates, unsanitized or undisinfected dorms, no social distancing, exposure to asbestos, rust, soiled mattresses, inadequate ventilation, deplorable conditions of dorms, leaking piper, no PPE mask wearing by staff) where "both B. Cates at CCI and his associate Warden D. Schuyler were absolutely aware of the know dangerous conditions" that causes Plaintiff's injury.

In "ground two," Plaintiff alleges violations by Warden Eaton at SCC. The court will not address these allegations. (*See,* Footnote 1.)

Plaintiff seeks injunctive relief to mandate social distancing at dorms, to prevent ongoing outbreaks of Covid that is causing Plaintiff's injuries. Plaintiff also seeks compensatory damages.

**III.   Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 8, 18 and 20 and fails to state a cognizable claim under 42 U.S.C. § 1983. Despite being provided with the

---

Warden P. Easton violate Fed.R.Civ.P. 18 and 20, as explained *infra*, and inappropriately expands the allegations from that permitted in the original complaint. These allegations belong in a separate action. In addition, it appears Plaintiff has not exhausted his administrative appeal regarding SCC. (ECF No. 33, p. 10 (Plaintiff alleges he has a "pending 602).)

6

relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies.

### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. *Id.;* see also *Twombly*, 550 U.S. at 556–557.

Plaintiff's complaint is not short, and it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. As Plaintiff was previously informed, Plaintiff's allegations must be based on facts as to what happened and not conclusions. As in the first and second amended complaint, Plaintiff does not allege facts to support that either defendant knew of the conditions at the relevant time and does not allege facts that the defendants were deliberately indifferent to the conditions. Further, as discussed below, Plaintiff has failed to limit his claims to those properly joined in a single action.

### B. Federal Rules of Civil Procedure 18 and 20

To the extent Plaintiff is attempting to join unrelated claims, he is informed that he may not join unrelated claims. Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Mackey v. Price*, 2020 WL 7319420, at *3–4 (E.D. Cal. Dec. 11, 2020), report and recommendation adopted, 2021 WL 843462 (E.D. Cal. Mar. 5, 2021). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in

the factual background of a claim. *Id.* at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff's third amended complaint joins claims which are unrelated. The claim for events surrounding contracting Covid at SCC is unrelated to claims arising at CCI. Plaintiff may not bring allegations for different constitutional violations on later dates merely because he contracted the same disease. Plaintiff may not bring claims arising at different institutions. Further, Plaintiff may not bring a claim for denial of workers compensation in an unrelated claim for contracting Covid. As Plaintiff is attempting to bring multiple claims that arose from different and unrelated occurrences, his complaint violates Federal Rules of Civil Procedure 18 and 20.

**C. Supervisor Liability**

Insofar as Plaintiff is attempting to sue Defendants Cates or Schuyler, or any other defendant, based solely upon his supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.,* 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must...demonstrate that his deprivation resulted from an official policy or custom established by a...policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washing*ton, 594 F.3d 707, 713 (9th Cir.2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See *Fayle v. Staple*y, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff is attempting to allege that Defendants Cates and Schulyer participated in or directed the violations, or knew of the violations and failed to act to prevent them. As in the first and second amended complaints, Plaintiff alleges that the warden "knew" or "should have known" or "absolutely knew" about conditions in the dorms. Such conclusory allegations are insufficient to state the causal link between such defendant and the claimed constitutional violation. Plaintiff has failed to allege direct participation in the alleged violations by the warden. Plaintiff may not sue an official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. *Iqbal*, 556 U.S. at 679. In other words, wardens are not liable based solely on their role in supervising prisons. The third amended complaint appears to attempt to impute the purported failures of staff to Defendant warden, which is not permissible under Section 1983.

There are no allegations other than conclusory allegations that Defendant Schuyler directly participated in the alleged constitutional violations. Plaintiff alleges that Defendant Schuyler was in the dorm on one occasion, saw the crowded conditions, and Plaintiff spoke to him about the conditions. Even assuming that Schuyler knew of the conditions, there are no factual allegations that Schuyler failed to act to prevent them. Like the warden, the third amended complaint appears to attempt to impute the purported failures of staff to Defendant Schuyler without any factual support.

**D.     Deliberate Indifference to Conditions of Confinement**

Plaintiff presents his Eighth Amendment claims as conditions of confinement claims rather than a deliberate indifference to serious medical needs.[2] He challenges the contraction of COVID due to the overcrowded and unsanitary conditions and improper inmate movement and failure to adhere to proper protocols. Plaintiff appears to claim that his transfer numerous times within CCI, to different housing units, put him at extreme risk of contracting COVID-19 in violation of the Eighth Amendment.

Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006); *Osolinski v. Kane*, 92 F.3d 934, 937 (9th Cir. 1996); *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (en banc). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982); *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981).

Two requirements must be met to show an Eighth Amendment violation. *Farmer*, 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious." *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate

---

[2] His allegations demonstrate that he was provided medical care. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082-83 (9th Cir. 2014). Plaintiff's allegations contain a reference to two nurses, Jane Doe #1 and Jane Doe #2. However, Plaintiff has failed to name these two nurses as defendants, and the allegations fail to show that they acted with deliberate indifference, as they provide a COVID test to him when he complained of symptoms. Plaintiff does not allege any failure on the nurses' part.

indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. *Farmer*, 511 U.S. at 835; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. *Johnson*, 217 F.3d at 731. Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety...." *Farmer*, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45.

It is clear that COVID-19 poses a substantial risk of serious harm. See *Plata v. Newsom*, 445 F.Supp.3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.); *see also Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.' "). The transmissibility of the COVID-19 virus in conjunction with Plaintiff's living conditions, which he alleges were overcrowded, with no partitions, are sufficient to satisfy the objective prong, i.e., that Plaintiff was "incarcerated under conditions posing a substantial risk of serious harm."

The next inquiry is that the prison official must know of and disregard an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk. Plaintiff alleges he

told Schuyler about the lack of social distancing, mask protocols lapses, bed positioning, lack of partitions, and other things, such as asbestos, rusted beds, soiled mattresses, and mold. Liberally construing the allegations, defendant Schuyler knew of the risk to inmate safety and health from Covid given the lapses in protocols.

However, Plaintiff fails to allege factual support that Schulyer disregarded that risk by failing to take reasonable measure to abate the risk.  Plaintiff complains of the mass inmate movement on July 10, 2020, into Rex Deal Dorm without disinfecting or cleaning.  But Plaintiff fails to allege any facts that Defendant Schuyler knew that inmates were moved to a Dorm which was not cleaned or sanitized.  Plaintiff fails to allege any facts that Schuyler had anything to do with the decision to move inmates. Plaintiff's conclusory allegation that inmates were moved, and attributing it to Schuyler, is insufficient.  In addition, as to other Covid related issues, while Plaintiff alleges he told Defendant Schuyler of the lack of social distancing, mask protocols lapses, bed positioning, lack of partitions, and other things such as asbestos, rusted beds, soiled mattresses, and mold, Plaintiff fails to allege what Defendant Schuyler did or did not do in relation to these conditions that disregarded the risk by failing to take reasonable measure to abate the risk. The third amended complaint fails to allege facts that Schuyler failed to respond to any infirmities in the prison.  In the prior screening orders, Plaintiff was informed that he must allege factual support that a defendant disregarded a risk by failing to take reasonable measure to abate the risk.  Plaintiff has failed to do so.

Plaintiff alleges, in conclusory statements, that Cates was aware of the conditions,[3] but he fails to allege the second part of the deliberate indifference standard: the prison official must disregard an excessive risk to inmate health or safety by failing to take reasonable measures to abate the risk.  Plaintiff fails to allege any facts that Cates had anything to do with the decision to move inmates. The third amended complaint fails to allege facts that Defendant Cates failed to respond to any infirmities in the prison.  Plaintiff's conclusory allegation that Cates "personally

---

[3] For instance, Plaintiff alleges that Defendants Cates and Schuyler "were both aware" of the immediate dangers with ordering mass movements of inmates within the facility and that it would contribute to the spread of Covid.

ordered" the movement is insufficient.

Plaintiff makes other conclusory allegations that Defendant Cates "absolutely aware" of the dangerous conditions (i.e., lack of social distancing, mask protocols lapses, bed positioning, lack of partitions, and other things such as asbestos, rusted beds, soiled mattresses, and mold). Plaintiff repeatedly concludes that the dangerous conditions are attributable to Defendant Cates, but without factual support for his conclusions.  In particular, as to the inmate movement in July 2020, Plaintiff fails to allege that Defendant Cates knew the inmates were moved into the Dorm, which was not cleaned or sanitized, just as he failed to do so for Defendant Schuyler. The only specific factual allegation as to Defendant Cates is that Plaintiff alleges that two Advisory Council members have said that Warden Cates made a statement in January 2021 that bed positioning and partitions were not needed in E Facility as Facility E was not under Covid 19 protocols.  While the Court accepts this factual allegation as true, it appears that this statement was made after the events of which Plaintiff complaints:  Mass prison movement in July 2020, which resulted in Plaintiff contracting Covid in July 2020 and again in October 2020, while Plaintiff was housed at CCI. The injuries Plaintiff sustained arose before the purported statements were made by Cates to the two Advisory Council members. Plaintiff fails to allege what Defendant Cates did or did not do in relation to the dangerous conditions that disregarded the risk by failing to take reasonable measure to abate the risk.

Plaintiff also alleges that he was an ADA worker required to go into "dangerous conditions."  Plaintiff has not alleged any factual support that either Schuyler or Cates knew Plaintiff was an ADA worker required to go into "dangerous conditions."

Thus, even if the response at CCI has been inadequate, Plaintiff has failed to allege factual support that Defendants Cates and Schuyler disregarded a known risk or failed to take any steps to address the risk. *Wilson*, 961 F.3d at 843 (6th Cir. 2020). In order to state a cognizable Eighth Amendment claim against the warden, and any other defendants named, Plaintiff must provide more than generalized allegations that the warden and other defendants have not done enough to control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562 AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-CV-1755 DB P, 2021 WL 915670, at *3

(E.D. Cal. Mar. 10, 2021) (failure to state a claim against warden for failure to adequately control the spread of COVID-19 in the prison).  Plaintiff has failed to do so, and accordingly, he fails to state a claim.

### E. Deliberate Indifference to Serious Medical Need

To allege a claim of deliberate indifference, plaintiff must show he had a serious medical need and defendants were deliberately indifferent to that need. A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Although unclear in the allegations, Plaintiff may be attempting to allege a deliberate indifference claim as to the mental health nurse, Jane Doe, who tested Plaintiff for Covid.[4] As stated above, Plaintiff fails to allege any factual support how this unnamed defendant was deliberately indifferent to Plaintiff's medical needs.  Plaintiff has been unable to cure this deficiency.

### F. *Brown v. Plata*

To the extent Plaintiff is asking for immediate release or other relief based on the decision in *Brown v. Plata*, the Court notes that "a remedial court order, standing alone, cannot serve as the basis for liability under 42 U.S.C. § 1983 because such orders do not create rights, privileges or immunities secured by the Constitution and laws of the United States. Thus, *Plata* by itself does not provide any substantive right on which plaintiff can rely...." *Thomas v. Alameda County*, 2015 WL 1201290, at *3 (N.D. Cal. Mar. 16, 2015) (citation and internal quotation marks omitted). *See also Peyton v. Brown*, 584 F. App'x 603, 604 (9th Cir. 2014) ("[T]he decision in *Brown v. Plata*, 563 U.S. 493, 131 S.Ct. 1910, 1946–47, 179 L.Ed.2d 969 (2011), requiring the

---

[4] This Jane Doe defendant is not named in the complaint.

14

State of California to reduce prison overcrowding to improve mental health and medical services to inmates, does not give [Plaintiff] cognizable claims for immediate or temporary supervised release merely because he also alleges deprivations arising from prison overcrowding.").

Relatedly, in a recent decision, the Ninth Circuit held that the CDCR's failure to adopt a vaccination mandate for CDCR workers was not deliberate indifference to prisoner rights under the Eighth Amendment. *Plata, et al. v. Newsom, et al*., No. 21-16696, 2022 WL 1210694, at *1 (9th Cir. Apr. 25, 2022). There was no deliberate indifference because "[CDCR] took significant action to address the health risks posed by COVID-19, including making vaccines and booster doses available to prisoners and correctional staff, enacting policies to encourage and facilitate staff and prisoner vaccination, requiring staff to wear personal protective equipment, and ensuring unvaccinated staff members regularly test for COVID-19." *Plata v. Newsom*, No. 21-16696, 2022 WL 1210694, at *1. The Court also pointed to other wide-spread mitigation practices. "Defendants also employed other widely accepted mitigation measures to reduce the risk of prisoners contracting COVID-19, including symptom screening for all individuals entering the prisons; enhanced cleaning in the facilities; adopting an outbreak action plan; upgrading ventilation; establishing quarantine protocols for medically vulnerable patients; and testing, masking, and physical distancing among inmates." *Plata*, No. 21-16696, 2022 WL 1210694, at *1. Thus, failure to follow recommendations to mandate vaccinations, does not rise to deliberate indifference.

Plaintiff argues that Defendant has ignored the guidelines from CDCR, CDC, and other recommendations. Plaintiff cannot rely upon *Plata* for the proposition that failure to follow guidelines is per se deliberate indifference. Plaintiff must allege factual support for his allegations, which he has failed to do.

**G.  Housing**

To the extent Plaintiff attempts to assert a claim for the premature closing of Facility E or F and his transfer to Facility D, he fails to state a claim.

In general, prison officials' housing and classification decisions do not give rise to federal constitutional claims encompassed by the protection of liberty and property guaranteed by the

Fifth and Fourteenth Amendments. *Montayne v. Haymes*, 427 U.S. 236, 242 (1976) (It is well settled that prisoners have no constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment.); *accord King v. Lemos*, No. 1:20-CV-01837-NONE-BAM (PC), 2021 WL 2038187, at *6 (E.D. Cal. May 21, 2021).

### H. Injunctive Relief

Plaintiff seeks injunctive relief in this action. Federal courts are courts of limited jurisdiction and in considering a request for injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. *Id.*

Further, requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2). Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984).

Plaintiff does not state the injunctive relief Plaintiff is seeking. The PLRA requires that injunctive relief be narrowly tailored to address the violations of the rights at issue. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674-75 (9th Cir. 1988). Therefore, the Court cannot grant broad requests for relief or requests based on the possibility of an injury.

**IV.     Conclusion and Order**

For the reasons stated, Plaintiff's third amended complaint violates Rules 8, 18 and 20 and fails to state a cognizable claim for relief.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **May 2, 2022**                              /s/ *Barbara A. McAuliffe*
                                                            UNITED STATES MAGISTRATE JUDGE